477 P.2d. 602

**HUBBARD BROADCASTING, INC.; a corporation, Plaintiff-Appellee,**

v.

**CITY OF ALBUQUERQUE, a Municipal Corporation, and General Communications and Entertainment Co., Inc., a corporation, Defendants-Appellants.**

**No. 9079.**

Supreme Court of New Mexico.

Dec. 7, 1970.

Civerolo, Hansen & Wolf, Albuquerque, for General Communications.

Frank M. Mims, Albuquerque, for City of Albuquerque.

Frank R. Coppler, Santa Fe, amicus curiae, for Municipal League of New Mexico.

Modrall, Seymour, Sperling, Roehl & Harris, Peter J. Broullire, III, Albuquerque, Covington & Burling, John W. Douglas, Quin Denvir, Washington, D. C., for appellee.

## OPINION

TACKETT, Justice.

This action was commenced in the District Court of Bernalillo County, New Mexico, for a declaratory judgment that defendant City of Albuquerque did not have authority to grant franchises to the defendant General Communications and Entertainment Company, Inc., hereinafter referred to as "GenCoE," to use the city streets and other public properties for a cable television system. The case was tried to the court without a jury and the court declared that the ordinances granting the franchises were invalid. Subsequent to the entry of the judgment, Hubbard petitioned the court for further relief. The court thereon declared that the City did not have power to grant a permit, license or other authority to GenCoE to use the city streets or rights of way for cable television installations; enjoined the City from issuing the permit or license; and enjoined GenCoE from accepting the same. Defendants appeal both the original judgment and the order granting further relief. The parties will be designated as they appeared in the lower court.

Hubbard claimed standing to sue based upon competition, degradation of its signal transmitted on the cable system and, alternatively, loss of good will and "ghosting," which is a dual picture caused by the dif-

ference in speed of transmission between air and cable signals.

Defendants contend no standing to sue; no justiciable controversy; pre-emption by the Federal Communications Commission; the court had no jurisdiction; the ordinances were valid; and that Hubbard had no legal right or interest in the validity of the ordinances.

Judgment for Hubbard was entered on February 24, 1970. Shortly thereafter, the City passed another ordinance granting a permit or license to GenCoE to establish a CATV system, revocable at the will of the City. Defendants were ordered to show cause why the later ordinance No. 41–1970 should not be held invalid. The trial court held the permit or license invalid and enjoined the City from granting any type of authority to GenCoE to operate a CATV system in Albuquerque, and also enjoined GenCoE from accepting such a permit or license.

The amicus curiae brief, contending that CATV is a public utility, is noted with a great deal of interest; however, we do not decide whether a CATV system is or could be considered to be a public utility, due to the admission by defendants that CATV is not a public utility. Several jurisdictions have considered this question, notably, TV Pix, Inc. v. Taylor, 304 F.Supp. 459 (D.Nev. 1968); Staminski v. Romeo, 62 Misc.2d 1051, 310 N.Y.S.2d 169 (1970); Aberdeen Cable TV Service, Inc. v. City of Aberdeen, S.D., 176 N.W.2d 738 (1970).

The statute under which Hubbard claims standing to maintain the action is § 22–6–1, N.M.S.A., 1953 Comp., as follows:

"In cases of actual controversy, the courts of record of the state of New Mexico shall have power, upon petition, declaration, complaint, or other appropriate pleadings, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of the final judg-

ment or decree and be reviewable as such."

Does Hubbard have standing to maintain this action? This question is answered in the negative for the following reasons. Hubbard contends and admits that the main issues here are competition with a rival business, economic loss of revenue and resulting profits, loss of good will, and "ghosting." Such contentions are without merit and are answered by the recent case of Ruidoso State Bank v. Brumlow, 81 N.M. 379, 467 P.2d 395 (1970), wherein this court considered similar contentions as those presented by Hubbard. Although the Ruidoso case was a petition for review of an order of the Banking Commission, and was decided under a different statute § 48–22–34, N.M.S.A., 1953 Comp., (Repl. 1966), the same principles of law are applicable here.

"One whose only injury will result from lawful competition suffers no legal wrong. * * *

"The right to appellate review of a judgment or order exists only in one who is aggrieved or prejudiced thereby. * * Appeals are ordinarily not allowed for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct error injuriously affecting appellant. * * *

" * * * The true test is whether appellant's legal rights have been invaded, not merely whether he has suffered [or may suffer in the future] any actual pecuniary loss or been deprived of any actual pecuniary benefit. * * *"

Ruidoso State Bank v. Brumlow, supra, and cases cited therein. See, Schreiber v. Baca, 58 N.M. 766, 276 P.2d 902 (1954); New Orleans, Mobile and Texas Railroad Company v. Ellerman, 105 U.S. (15 Otto) 166, 26 L.Ed. 1015 (1882); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L. Ed. 374 (1938); Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U. S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Hardin v. Kentucky Utilities Co., 390 U.S.

1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); Kansas City Power & Light Company v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (1955). There being no legal right invaded, Hubbard has no standing to attack the ordinances. Alabama Power Co. v. Ickes, supra.

Nor does this case present a situation comparable to State ex rel. Maloney v. Sierra, 82 N.M. 125, 477 P.2d 301 (1970), wherein the court decided that, because of the duties of the public officers involved, each was an interested party.

Hubbard contends that the City acted without statutory authority in enacting all ordinances with which we are here concerned and, therefore, such ordinances are invalid. Hubbard distinguishes Ruidoso State Bank v. Brumlow, supra, on the basis that it held there was no right to be free from "lawful competition," but here, it claims there is "unlawful" competition since the ordinances were invalid. Hubbard also argues that the Declaratory Judgments Act uses a more liberal standard for standing, namely, "any interested party," § 22–6–1, supra, as opposed to the Banking Act, which requires that a person must be "aggrieved and directly affected," § 48–22–34, supra.

■ Whether or not the City of Albuquerque acted ultra vires is a question quite apart and distinct from whether GenCoE is a lawful competitor. Cable television per se is not illegal or unfair competition. Cable Vision v. KUTV, 335 F.2d 348 (9th Cir.1964); Herald Publishing Co. v. Florida Antennavision, Inc., 173 So.2d 469 (Fla. App.1965).

In Alabama Power Co. v. Ickes, supra, the United States Supreme Court stated the distinction by the following example:

"John Doe, let us suppose, is engaged in operating a grocery store. Richard Roe, desiring to open a rival and competing establishment, seeks a loan from a manufacturing concern which, under its charter, is without authority to make the loan. The loan, if made, will be *ultra vires*. The state or a stockholder of the

corporation, perhaps a creditor in some circumstances, may, upon that ground, enjoin the loan. But may it be enjoined at the suit of John Doe, a stranger to the corporation, because the lawful use of the money will prove injurious to him and this result is foreseen and expected both by the lender and the borrower, Richard Roe? Certainly not, unless we are prepared to lay down the general rule that A, who will suffer damage from the lawful act of B, and who plainly will have no case against B, may nevertheless invoke judicial aid to restrain a third party, acting without authority, from furnishing means which will enable B to do what the law permits him to do. Such a rule would be opposed to sound reason, as we have already tried to show, and cannot be accepted."

In Green v. Town of Gallup, 46 N.M. 71, 120 P.2d 619 (1941), it was held that:

"* * * [A] financial loss to the plaintiff objecting to a city ordinance was not alone ground for holding the ordinance and its enforcement invalid * * *."

■ One injured by competition authorized by a state instrumentality has no standing to maintain a suit for declaratory relief against such state instrumentality. Nantucket Boat Inc. v. Woods Hole, 345 Mass. 551, 188 N.E.2d 476 (1963); 22 Am.Jur.2d Declaratory Judgments, § 32 at 883.

The city is the sole judge as to what is best for the public health, welfare and safety of its inhabitants. Barber's Super Markets, Inc. v. City of Grants, 80 N.M. 533, 458 P.2d 785 (1969).

As to whether our Declaratory Judgments Act in its use of "any interested party" confers a more liberal test than the Banking Act in Ruidoso State Bank v. Brumlow, supra, we do not need to decide since, as stated in Hardin v. Kentucky Utilities Co., supra, the general rule is that economic injury from lawful competition cannot, in and of itself, confer standing to question the legality of any aspect of the competitor's operations. See also, Tomlin v. Town

of Las Cruces, 38 N.M. 247, 31 P.2d 258 (1934); Green v. Town of Gallup, supra; American Linen Supply of New Mexico v. City of Las Cruces, 73 N.M. 30, 385 P.2d 359 (1963); State ex rel. Gomez v. Campbell, 75 N.M. 86, 400 P.2d 956 (1965); Barber's Super Markets, Inc. v. City of Grants, supra.

Hubbard urges that the recent decisions of the United States Supreme Court in Association of Data Processing Service Organization, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), establish the proposition that the prospective future loss of profits from additional competition was a sufficient basis for standing to challenge governmental action authorizing such competition. In those cases, the Supreme Court determined that a particular provision of the statutes involved brought the complaining parties within "the zone of interests" protected by the statutes and conferred standing to sue. In Association of Data Processing Service Organization, Inc. v. Camp, supra, the plaintiff complained that it would be economically injured by national banks making their data processing services available to others. The Bank Service Corporation Act of 1962, 76 Stat. 1132, 12 U.S.C. § 1864, provided that no bank service corporation could engage in any activity other than bank service for banks. The Supreme Court found that this provision created a protectable zone of interest sufficient for standing purposes. To the same effect is Curran v. Laird, 136 U.S.App.D.C. 280, 420 F.2d 122 (1969), wherein the Circuit Court found standing if the statute reflected a purpose to protect the competitive interest. The ordinances before this court do not present a comparable situation.

Since we hold that Hubbard does not have standing to maintain the action, it must be dismissed. State ex rel. Overton v. New Mexico State Tax Com'n, 81 N.M. 28, 462 P.2d 613 (1970). The other points presented need not be discussed.

The cause is reversed and remanded to the trial court with instructions to reinstate the case on the docket and enter a new judgment dismissing the complaint with prejudice.

It is so ordered.

COMPTON, C. J., and McKENNA, J., concur.